**UNITED STATES, Appellee,**

v.

**Jeffrey SPRINGER, Defendant, Appellant.**

No. 93–1642.

United States Court of Appeals, First Circuit.

July 7, 1994.

Michael C. Bourbeau, by Appointment of the Court, with whom Bourbeau and Bourbeau, Boston, MA, was on brief for appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Edwin J. Gale, U.S. Atty., and Ira Belkin, Asst. U.S. Atty., Providence, RI, were on brief for appellee.

Before BREYER,* Chief Judge, BOUDIN and STAHL, Circuit Judges.

STAHL, Circuit Judge.

Jeffrey Springer appeals the sentence imposed after he pled guilty, pursuant to a plea agreement, to one count of wire fraud, 18 U.S.C. § 1343, and one count of bank fraud, 18 U.S.C. § 1344. Springer makes three arguments, none of which was presented to the district court in the first instance: 1) that the district court erred in granting him only a two-level, rather than a three-level, acceptance of responsibility reduction in his sentencing guidelines offense level; 2) that the court did not adequately consider his financial circumstances when it ordered him to pay $1,018,347 in restitution; and 3) that he received ineffective assistance of counsel because his attorney failed to object to either the court's failure to award him a three-level reduction for acceptance of responsibility or to the restitution order. The government says that we need not consider these questions because Springer waived his right to appeal as part of his plea agreement. Because we discern no plain error in the relevant decisions made by the district court, *see*

* Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion.

*United States v. Carrozza*, 4 F.3d 70, 84 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1644, 128 L.Ed.2d 365 (1994), we need not address this issue, and affirm defendant's sentence.

## I.

### *Acceptance of Responsibility*

■ Springer was sentenced in May 1993. Pursuant to the November 1992 version of the Guidelines (the version in effect at the time of his sentencing), the district court looked to the 1988 version of the Guidelines (the version in effect at the time Springer committed his crime) to calculate Springer's sentence. It did this because application of the 1992 version would have resulted in Springer receiving a more severe sentence than he could have anticipated at the time of his crime, *see* U.S.S.G. § 1B1.11(b)(1) (Nov. 1992) (directing courts to use Guidelines in effect at time offense was committed if Guidelines in effect at time of sentencing would violate the Constitution's *ex post facto* Clause). As part of the calculation of Springer's sentence, the court granted Springer the two-level downward adjustment for acceptance of responsibility available under the 1988 version of the Guidelines. *See* U.S.S.G. § 3E1.1 (Nov.1988). Springer now argues that the district court erred because it did not consider granting him a three-level reduction for acceptance of responsibility, the maximum adjustment available under the 1992 version of the Guidelines. U.S.S.G. § 3E1.1 (Nov.1992).

The district court correctly looked to the 1988 Guidelines in determining the maximum permissible downward adjustment for Springer's acceptance of responsibility. The 1992 Guidelines set forth what has been referred to as the "one book" rule. *See* U.S.S.G. § 1B1.11(b)(2) (Nov.1992). This provision instructs the district court that when it looks to an earlier version of the Guidelines to calculate a sentence, it must apply *all* of the Guidelines in that earlier version. It provides that a court cannot

The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

"apply ... one section from one edition ... and another guideline section from a different edition." *Id.*

There is no doubt that Springer received a lighter sentence under the 1988 Guidelines than he would have received under the 1992 version. For Springer's purposes, there was one important difference between the two versions: under the 1988 Guidelines, Springer's offense level was increased by nine levels to account for the $1.8 million loss he caused, while under the 1992 Guidelines, that same loss would have resulted in a twelve-level increase. *Compare* U.S.S.G. § 2F1.1(b)(1)(J) (Nov.1988) *with* U.S.S.G. § 2F1.1(b)(1)(M) (Nov.1992). This difference meant that, even with a three-level reduction for acceptance of responsibility, Springer's applicable guideline sentencing range under the 1992 Guidelines would have been 24 to 30 months. Under the 1988 Guidelines, however, with the two-level reduction for acceptance of responsibility, Springer's sentencing range was 18 to 24 months.[1]

■ Springer advances three reasons why the court should not have applied the "one book" rule, but instead should have given him the benefit of both the 1992 Guidelines' acceptance of responsibility provision and the 1988 Guidelines' smaller increase for amount of loss. First, he says that the "one book" guideline was not in effect at the time of his offense and that its application here would violate the *ex post facto* Clause. U.S. Const. Art. I, § 9. This is simply incorrect. The *ex post facto* Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981). By looking to the 1988 Guidelines, the district court imposed the very punishment provided for by law at the time Springer committed the act for which he was being punished.

Springer's second argument is no more availing. He argues that, by statute, he is entitled to the benefit of the pre-sentence modifications of the Guidelines. He construes 18 U.S.C. § 3553(a)(4), which directs the sentencing court to "consider ... the Guidelines ... that are in effect on the date the defendant is sentenced," as requiring application of the November 1992 version of the "acceptance of responsibility" provision. However, Springer misunderstands the process by which the sentencing court calculated his sentence. The sentencing court *did* apply the November 1992 Guidelines. It was the 1992 Guidelines that instructed the court to look to the 1988 Guidelines because of *ex post facto* concerns, and it was the 1992 Guidelines that instructed the court to apply the "one book" rule and to look to the 1988 Guidelines in order to determine the appropriate reduction for acceptance of responsibility. Thus, the sentencing court acted in accordance with § 3553(a)(4). *See also* 18 U.S.C. § 3553(a)(5) (Sentencing court should "consider ... any pertinent policy statement ... that is in effect on the date defendant is sentenced.").

Springer's third argument is that if the "one book" rule applies, he will be treated differently than other 1988 offenders sentenced after the 1992 amendment to the acceptance of responsibility provision (or, at least, differently than those for whom application of the 1992 guidelines does not create ex post facto concerns). This argument is a red herring. What matters is that Springer will be treated *the same* as *all* those convicted of the same offense at the same time, regardless of when they are sentenced. This is consistent with the concerns of Congress and the Guidelines' goal of uniformity. *Cf.* 18 U.S.C. § 3553(a)(6) (Sentencing court should "consider ... the need to avoid unwarranted sentence disparities among defendants ... who have been found guilty of similar conduct.").

Accordingly, we do not discern any error, let alone any plain error, in the district court's failure to award Springer a three-level reduction for acceptance of responsibility.

## II.

### Restitution Order

■ As a condition of supervised release, the sentencing court ordered Springer to pay

---

**1.** Springer was sentenced to 18 months in prison, the low end of the Guideline.

restitution of $1,018,347 to the bank from which Springer had secured a construction loan in the amount of $1,460,000 (using as a basis for his credit worthiness fraudulent personal tax returns). Springer argues that the sentencing court did not sufficiently consider his ability to pay restitution. We disagree.

■ In fashioning a restitution order, a court must consider "the financial resources of the defendant, the financial needs and earning ability of the defendant, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). The court need not make specific findings respecting these considerations as long as "the record on appeal reveals that the judge made implicit findings or otherwise adequately evinced his consideration of the[ ] factors [listed in 18 U.S.C. § 3664(a) ]." *United States v. Savoie,* 985 F.2d 612, 618 (1st Cir.1993).

Here, it appears that the sentencing court sufficiently considered these factors. Springer says that he was a college dropout with a sporadic work history, no assets, and more than $900,000 in liabilities, and thus clearly unable to pay over $1 million in restitution. However, the sentencing court had all of this information before it in the presentence investigation report ("PSR"). Moreover, it explicitly adopted the PSR's findings. *Cf. Savoie,* 985 F.2d at 619. Furthermore, at the sentencing hearing, the court made the following comments on the restitution order:

> You have a very large restitution obligation and the Court—you don't really have much assets now. The Court has no doubt that at some point you probably will.

This statement by the court does not reflect "the possibility of an unforeseen windfall," as Springer suggests. Instead, we construe it as evincing a firm belief, on the part of the district court, that Springer eventually will be able to meet his obligation. This is consistent with the many other statements made by the court to the effect that Springer was a talented individual who could be successful if he redirected his energies to lawful activities.

2. If the court's restitution order, the satisfaction of which is a condition of Springer's supervised release, does turn out to be unreasonably oner-

In fact, this sanguine view of Springer's future was the primary reason given by the court for sentencing Springer at the low end of the Guideline range.

■ It appears that the sentencing court had the relevant information before it and considered the appropriate factors in making its restitution order. No more is required. *Cf. United States v. Brandon,* 17 F.3d 409, 461 (1st Cir.) ($500,000 restitution order upheld for indigent defendant who had prospect of future inheritance and ability to obtain gainful employment), *petition for cert. filed,* 63 U.S.L.W. 3001 (June 13, 1994) (No. 93–2001).[2]

Accordingly, we find no plain error in the district court's restitution order.

### III.

#### *Ineffective Assistance of Counsel*

■ Springer argues that he received ineffective assistance of counsel because his attorney did not raise the issue of the court's failure to consider the three-level reduction for acceptance of responsibility and because his attorney did not protest the size of the restitution order. Because Springer was not entitled to a three-level reduction, his attorney cannot be blamed for not raising the issue. Insofar as the failure to object to the restitution order may give rise to an ineffective assistance claim, we will, in accordance with our usual practice, not entertain it for the first time on direct appeal. This is because the claim here would require us to go beyond the sentencing record and consider such things as sentencing counsel's strategy. *See United States v. Beasley,* 12 F.3d 280, 285 (1st Cir.1993).

### IV.

#### *Conclusion*

For the reasons stated above, we affirm Springer's sentence.

*Affirmed.*

ous, we see no reason why the district court cannot, in the future, modify it. *See* 18 U.S.C. § 3663(g).