**UNITED STATES, Appellee,**

v.

**Jeffrey PHANEUF, Defendant, Appellant.**

No. 95–1389.

United States Court of Appeals,
First Circuit.

Heard March 4, 1996.

Decided Aug. 2, 1996.

8. *See, supra* n. 6.

Donald R. Furman, Jr., Boston, MA, for appellant.

Sheila W. Sawyer, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, Boston, MA, was on brief, for appellee.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Pursuant to a plea agreement with the government, defendant-appellant Jeffrey Phaneuf pled guilty to three counts of making a false statement on credit card applications in violation of 18 U.S.C. § 1014, and two counts of mail fraud in violation of 18 U.S.C. § 1341. The United States District Court for the District of Massachusetts sentenced Phaneuf to 24 months in prison on the first three counts to run concurrently with a 30–month sentence on the last two counts, followed by 36 months of supervised release. In addition, the court ordered Phaneuf to pay $20,400 to the Bank of New England ("BNE") as restitution for losses. Phaneuf appeals from his sentence.

## I.

In April 1989, police officers in Massachusetts discovered numerous stolen credit cards in Phaneuf's car during a routine traffic stop. Police obtained a warrant to search his residence in Hampton, New Hampshire. They discovered numerous credit cards in his name, along with receipts and credit card charge slips. A follow-up investigation revealed that 31 of the cards recovered were ones that Phaneuf had reported as stolen the previous year.

In June 1989, evidence from the state investigation—including credit card applications, receipts, stop payment order receipts, and correspondence between Phaneuf and various banks—was turned over to the United States Secret Service in Boston. In July,

Phaneuf complied with that office's request for handwriting exemplars to compare with the documents obtained from his home.

In August 1990, Phaneuf called Agent Hoelen of the Secret Service to ask about the status of the investigation. Phaneuf offered to cooperate with the Secret Service. In September 1990, Phaneuf and Agent Hoelen met, without counsel or a representative from the United States Attorney's Office present. After Agent Hoelen advised Phaneuf of his Fifth Amendment right against self-incrimination, Phaneuf explained his scheme: from January 1988 through March 1989, he obtained numerous credit cards from banks and credit card companies by submitting false applications, used the cards (or authorized others to use them), and then reported the cards as stolen or failed to pay back the issuing institutions. He also wrote checks against his personal checking account at BNE to pay off credit card balances and then issued stop payment orders on the checks after the credit card balances had been reduced by the amount of the checks. In this way, he was able to resume use of the credit cards and incur more debt.

At the end of his meeting with Agent Hoelen, Phaneuf signed a two-page typed statement outlining the above scheme and initialled an additional ten or eleven pages of "certified inventory of evidence" forms. Phaneuf told Agent Hoelen that he believed the total amount of fraud attributable to his scheme was about $176,000. Phaneuf apparently made this comment in response to a higher loss estimate offered by Agent Hoelen.

In November 1994, the government filed a five-count indictment in the United States District Court for the District of Massachusetts charging Phaneuf with mail fraud and making false statements on credit card applications. A plea hearing was held on December 12, at which time the government stated that the total loss attributable to Phaneuf for sentencing purposes was approximately $175,000. Phaneuf refused to agree to the $175,000 loss amount contained in the plea agreement. Defense counsel questioned how the government would prove this total amount, given the lower amounts alleged in

the various counts ($64,000 in counts I–III and $57,182 in counts IV–V, for a sum of $121,182). As a result of this dispute, the district court did not accept Phaneuf's guilty plea and ended the plea proceedings. A second plea hearing was held on December 20, at which the court accepted Phaneuf's guilty plea but declared the amount of the loss to be "in dispute."

On January 9, 1995, Assistant United States Attorney Sheila Sawyer filed a notice of appearance replacing Duane Deskins who had been handling Phaneuf's prosecution. Shortly thereafter, the probation department filed a Presentence Investigation Report ("PSR") that relied primarily upon Phaneuf's two-page signed statement of September 1990 to characterize the offense conduct. Phaneuf's base offense level was calculated to be six, and was increased by six levels because he was found to be responsible for a loss amount between $100,001 and $200,000.[1] Two more levels were added because the offense involved more than minimal planning. The probation officer then took into account Phaneuf's acceptance of responsibility, and found that his total adjusted offense level was twelve. Given that offense level and a criminal history category of V, Phaneuf's guideline sentencing range was put at 27 to 33 months.

The government did not object to the PSR. Phaneuf made several objections. He asserted that neither he nor his attorney had seen "any information in the possession of the government" other than his two-page statement given to Agent Hoelen. Phaneuf petitioned the probation department to confine the loss calculation to the figures listed in the mail fraud counts of the indictment. The probation officer considered Phaneuf's objections but refused to alter the loss calculations.

Sentencing was scheduled for March 27, 1995. On March 7, the government filed with the court a sentencing memorandum in support of the probation department's loss calculations. The government attached to its sentencing memorandum an affidavit from Agent Hoelen describing the investigation, the confession signed by Phaneuf in 1990,

and a certified inventory of evidence prepared by Agent Hoelen. On Thursday, March 23, Assistant United States Attorney Sawyer called defense counsel to see whether he still intended to contest the loss amount and whether he "had any interest in looking at the materials referenced in the government's sentencing memorandum prior to the sentencing hearing." Defense counsel rejected the government's offer to look at the evidence, stating his intention to challenge the government for alleged discovery violations.

At sentencing, the district court concluded that the loss amount was "somewhere in the range of" $100,001 to $200,000, and not less than $166,229.38. The district court also found that the government had not failed to make available to the defense the documentation supporting its loss calculation. Phaneuf was sentenced to 30 months in prison, to be followed by a 36-month term of supervised release. The court imposed several special conditions of supervised release: it required Phaneuf to obtain prior approval of the probation department before "incurring any extension of credit, including charge cards, credit cards or loans" and before making "any purchase ... exceeding the cost of $100." The court further ordered Phaneuf to make restitution to the BNE in the amount of $20,400 for losses it sustained in connection with the mail fraud scheme.

## II.

Phaneuf assigns four errors on appeal: (1) that the government's violation of a local discovery rule deprived him of a fair sentencing; (2) that the district court erred in calculating the loss amount for sentencing purposes; (3) that the supervised release condition requiring him to obtain prior approval for purchases over $100 was not reasonably related to his offenses as required by 18 U.S.C. § 3583(d)(1); and (4) that the court's restitution order was improper.

### 1. Discovery Violation

■ Phaneuf contends that the government's purported failure to provide the de-

1. The applicable offense level for fraud claims increases in proportion to the value of the fraud.

fense with documentation supporting its loss estimate deprived him of a fair sentencing procedure. He relies on Local Rule, D.Mass. 116.1(a), which requires that, in criminal cases, the government automatically disclose certain written evidence in its possession to the defense.[2]

Phaneuf argues that the government violated Local Rule 116.1 by not spontaneously handing over to the defense various pieces of evidence including the handwriting analyses produced by the Forensic Services Division of the Secret Service and evidence of "numerous legitimate payments" on Phaneuf's credit card accounts. As a result, Phaneuf argues, he could not effectively challenge the government's loss estimate and the corresponding six-level increase in base offense level. The government replies that Local Rule 116.1, on its face, applies only to pretrial discovery. At sentencing, the government says, a defendant is entitled to no more than fair notice of the evidence upon which the government intends to rely.[3] In any event, the government insists that Phaneuf was fully advised in advance of the sentencing hearing of the government's evidence and that his counsel had made no request at all for evidence.

We need not linger over what role, if any, Local Rule 116.1 should play at sentencing. Under any analysis, Phaneuf is not entitled to relief here. He has only himself to blame for any gaps in his knowledge of the basis of the government's sentencing proposals. Counsel for the defense conceded at the sentencing hearing that, during the two and one-half month period leading up to sentencing, he did not request any data from the prosecution, nor did he request the court to compel the disclosure of any evidence.[4] The absence of any such requests is especially telling given that three weeks before sentencing the government had filed a sentencing memorandum setting forth the government's position on the loss amount. Moreover, some four days before sentencing, Assistant United States Attorney Sawyer called defense counsel and offered him an opportunity to inspect and copy the materials referenced in the government's sentencing memorandum—an offer which defense counsel refused, citing a strategic choice to pursue a prosecutorial misfeasance argument. Even after this argument failed at sentencing, defense counsel did not request a continuance of sentencing to permit him an opportunity to investigate further the government's evidence.

The district court, after hearing argument, found that the government did not fail to make available to the defense the documentation supporting its loss calculations. This finding was amply supported by the facts and arguments presented. *See Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 532 (1st Cir.1996) (holding that district court has broad discretion over matters concerning discovery); *United States v. Tajeddini*, 996 F.2d 1278, 1287 (1st Cir.1993) (noting that rulings on discovery matters are reviewed for an abuse of discretion). Moreover, by not, even then, requesting a continuance during which the evidence allegedly withheld could be disclosed and reviewed, Phaneuf further weakened any claim he might conceivably

2. The Rule provides in relevant part:

> In all criminal cases, the following material and information ... shall be disclosed to the opposing party. Such disclosure ... shall occur ... in all events within fourteen (14) days after arraignment.
> (a) The government shall disclose, and allow the defendant to inspect, copy and photograph, all written material as follows:

>    .     .     .     .     .

> (3) All relevant reports of results of physical or mental examinations, and of all scientific tests, experiments and comparisons, or copies thereof, made in connection with a particular case.
> (4) All ... documents ... which the Government intends to use at the trial of the case....

> (5) All exculpatory evidence within the meaning of *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

> Local Rule, D.Mass. 116.1(a).

3. Neither party contends that Phaneuf did not have fair notice of the evidence upon which the government intended to rely at sentencing.

4. Although defense counsel requested certain information from the government in the period before the institution of formal judicial proceedings, he conceded at sentencing that he did not request the documents at any point after the hearing at which Phaneuf's plea was taken.

have had of an alleged discovery violation. *See United States v. Tardiff,* 969 F.2d 1283, 1286 (1st Cir.1992) ("[E]ven if a defendant is faced at sentencing with information that he has not had a chance to rebut ... we think it incumbent upon the defendant to ask for a continuance then and there."); *United States v. Diaz–Villafane,* 874 F.2d 43, 47 (1st Cir.) ("We find it of decretory significance that defense counsel, although seeking unsuccessfully to block the testimony entirely, never moved for a continuance[;] [i]t is, we think, incumbent upon a party faced with such a situation to ask explicitly that the court grant the time needed to regroup, or waive the point."), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

■ Phaneuf's argument that he was denied discovery documents is also weakened by the fact that much, although not all, of the government's information that was directly related to the loss estimate was information that Phaneuf himself knew about or could have obtained. Phaneuf was aware of the financial institutions which he had defrauded, and could have contacted them himself to obtain information. This is not a situation in which most of the information relevant to sentencing was known only to the government.

We find no merit in Phaneuf's argument that the government's purported failure to disclose evidence denied him his "constitutional right not to be sentenced on the basis of invalid information." *Diaz–Villafane,* 874 F.2d at 47 (quoting *United States v. Fogel,* 829 F.2d 77, 90 (D.C.Cir.1987)).

## 2. Amount of Loss

■ Phaneuf claims that the district court made an unreasonable determination of the amount of loss attributable to him for sentencing purposes. A district court's loss estimate is a factual determination, and "a party dissatisfied with the sentencing court's quan-

tification of the amount of loss in a particular case must go a long way to demonstrate that the finding is clearly erroneous." *United States v. Rostoff,* 53 F.3d 398, 407 (1st Cir. 1995); *see also United States v. Pavao,* 948 F.2d 74, 77 (1st Cir.1991).

■ When determining the amount of loss for sentencing purposes, the district court "need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, comment. (n.8); *see also Rostoff,* 53 F.3d at 407 (stating that "[c]ourts can, and frequently do, deal with rough estimates" when calculating the amount of loss). The district court found that the loss attributable to Phaneuf was "not less than $166,-299.38" which placed him in the $100,001 to $200,000 category necessitating a six-level increase in base offense level. In reaching its loss determination, the court considered: (1) Agent Hoelen's affidavit describing his investigation and the evidence recovered from Phaneuf's home; (2) Phaneuf's signed statement made to Agent Hoelen in September of 1990 stating that the amount of loss was approximately $176,000; and (3) the bankruptcy petition filed by Phaneuf in 1994 which discharged many of his debts.[5]

■ Phaneuf challenges the court's loss determination as not being based on "available information" within the meaning of U.S.S.G. § 2F1.1 comment (n.8), because it was derived in part from Agent Hoelen's affidavit and Phaneuf's statement rather than from the underlying evidence—the credit cards, receipts, sales slips, and other documents collected during the investigation.[6] This argument is without merit. A district court may rely upon any relevant evidence, including hearsay, to prove facts at sentencing provided the evidence is sufficiently reliable. U.S.S.G. § 6A1.3(a) (A sentencing court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at

---

5. According to the PSR, Phaneuf filed for Chapter 7 bankruptcy protection on February 8, 1994, and was discharged from debts totalling $210,-702 on May 31, 1994.

6. In his challenge to the loss determination, Phaneuf reiterates his argument that the government, by failing to disclose relevant documents,

prevented him from presenting any evidence regarding the specific loss amount. As we determined in Part II.1 *supra,* this argument fails because Phaneuf was offered an opportunity to inspect the documents in the government's possession.

trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); *see also Rostoff*, 53 F.3d at 407; *Tardiff*, 969 F.2d at 1287; *United States v. Figaro*, 935 F.2d 4, 8 (1st Cir.1991). Here, the district court relied on the sworn affidavit of an officer who, having conducted the investigation, had personal knowledge of the events in question. This is the type and kind of evidence on which sentencing courts often rely. *See e.g., United States v. Aymelek*, 926 F.2d 64, 68 (1st Cir.1991).

■ Phaneuf next argues that he made "numerous legitimate payments" on his credit card accounts which may have been included in the court's total loss amount.[7] This argument is equally unavailing. Phaneuf has not provided any evidence that the legitimate payments were improperly taken into account in determining the loss amount. Absent such evidence, we logically conclude that the loss calculations upon which the court relied were based on the amount owing to various institutions, rather than the amount paid. In addition, we note that both Agent Hoelen and Phaneuf himself (in his 1990 statement) attributed approximately $176,000 of loss to Phaneuf's *fraudulent* activities.

We see no error, let alone clear error, in the district court's loss determination. The government introduced ample evidence upon which the court could conclude that Phaneuf was responsible for not less than $166,-299.38.[8] Moreover, Phaneuf himself admitted to the court at sentencing that the loss attributable to him was within the sentencing guideline category of $100,001 to $200,000 requiring a six-level increase in his base offense level.[9]

### 3. Special Condition of Release

■ Phaneuf argues that the district court erred in imposing a special condition of supervised release requiring prior approval from the probation department for purchases over $100. We ordinarily review a district court's imposition of a special release condition for an abuse of discretion. *See United States v. Thurlow*, 44 F.3d 46, 47 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 1987, 131 L.Ed.2d 874 (1995). However, as Phaneuf did not object to the special condition at sentencing, our review is for plain error. *See United States v. Peppe*, 80 F.3d 19, 22 (1st Cir.1996).

■ The court, adopting the recommendation in the PSR, imposed the following special conditions on Phaneuf to be observed during his three-year period of supervised release:

> The defendant shall participate in a mental health counselling program at the direction of the probation department.

> The defendant shall not open any new lines of credit without prior approval of the probation department.

> The defendant shall not make any purchases over $100 without prior approval of the probation department.

---

7. In making this claim, Phaneuf relies on an excerpt from his 1990 statement to Agent Hoelen which discusses his fraudulent practices:

> During the course of my credit card activity, I made *numerous legitimate payments* on my accounts, however, subsequent payments made on the following accounts with checks from my personal checking account ... were made solely for the purpose of making full payments on the accounts to create either a zero balance or a credit balance and to increase credit available to me. After submitting these checks for payment, I would place a stop payment on them.

> (emphasis added).

8. We also dismiss Phaneuf's perfunctory argument that the district court erred in not holding a hearing on the issue of loss amount. The denial of an evidentiary hearing at sentencing is review-able only for an abuse of discretion. We cannot find that the district court abused its discretion in not granting an evidentiary hearing when neither the prosecution nor the defense requested such a hearing. *Tardiff*, 969 F.2d at 1286 ("[T]he failure to ask the district court to convene an evidentiary hearing ordinarily spells defeat for a contention that one should have been held."); *see also United States v. Mala*, 7 F.3d 1058, 1062 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994).

9. Phaneuf stated at sentencing:

> The amounts of money, at this point, I am very confused as to what it is. I'm not even going to argue it. I guess it has to be somewhere in the range of my—within the hundred thousand and 200,000. So I am not really going to argue it.

The defendant shall provide the probation department with any requested financial information and records.

A sentencing judge has broad discretion to impose special conditions of release that are "reasonably related" to (1) the defendant's offense, history and characteristics; (2) the need for adequate deterrence; and (3) the need to protect the public from further crimes of the defendant.[10] *See* U.S.S.G. § 5D1.3(b) and the corresponding statutory provisions, 18 U.S.C. §§ 3553(a)(2), 3583(d).

▮▮▮ Phaneuf challenges the special condition limiting his purchasing power, arguing that "[t]he record is silent on a relationship between spending $100.01, accepting pre-approved credit cards, and perpetrating a fraud on a bank." While it would have been helpful had the court stated its rationale, we can perceive a sufficient connection between the restriction and Phaneuf's criminal conduct for the former to pass muster under the plain error standard.

As Phaneuf concedes, he has a long history of mental health problems[11] and, at times, has been unable to control his spending. The nature of the imposed conditions strongly suggests that the district court viewed Phaneuf's credit card crimes as stemming from a total lack of financial discipline and a compulsion to make excessive expenditures. The court could rationally have concluded that oversight of expenditures over $100 would help deter the kind of overspending and debt that might once more lead Phaneuf to undertake fraudulent schemes.[12]

▮▮▮ To overturn the condition under the plain error standard, Phaneuf must show an obvious and clear error under current law that affected his substantial rights. Fed. R.Crim.P. 52(b); *United States v. Olano*, 507 U.S. 725, 732–35, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993); *United States v. Laboy–Delgado*, 84 F.3d 22, 31 (1st Cir.1996). Even if plain error exists, *Olano* suggests that courts should not exercise their discretion to correct the error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). In this case, even if we were to assume, *arguendo*, that the district court went too far, the error was not

---

**10.** *See, e.g., Peppe*, 80 F.3d at 23 (condition that defendant could not incur new credit charges or open additional lines of credit without prior approval of probation department permissible as an effort to monitor defendant's use of funds where defendant had been convicted of extortionate extension of credit); *Thurlow*, 44 F.3d at 47 (condition that defendant convicted of theft-related offenses abstain from consuming alcohol permissible because of defendant's history of substance abuse and use of crime proceeds to purchase alcohol on several occasions); *United States v. Johnson*, 998 F.2d 696, 699 (9th Cir. 1993) (no abuse of discretion to impose, along with other restrictions, condition requiring that defendant abstain from alcohol use where defendant had history of substance abuse and had been involved in alcohol-related incidents); *United States v. Chinske*, 978 F.2d 557, 560 (9th Cir.1992) (conditions that defendant own no firearms, attend a substance abuse treatment program, and submit to searches of his person, vehicle, and residence related to offense of maintaining a residence for the cultivation of marijuana); *United States v. Sharp*, 931 F.2d 1310, 1311 (8th Cir.1991) (condition subjecting defendant to warrantless searches to determine if he possessed alcohol or drugs permitted when defendant convicted of narcotics violation); *cf. United States v. Abrar*, 58 F.3d 43, 46–47 (2d Cir.1995) (condition requiring defendant to pay back personal loans unrelated to crime constitutes plain error); *United States v. Prendergast*, 979 F.2d 1289, 1293 (8th Cir.1992) (conditions requiring defendant convicted of wire fraud to abstain from consuming alcohol and drugs, to undergo drug tests, and to be subject to warrantless searches of his premises, vehicle, or person, impermissible in absence of "evidence indicating that [defendant] suffers from alcoholism or that the use of alcohol in any way contributed to the commission of the offense for which he was sentenced").

**11.** Phaneuf was hospitalized as an adolescent for "conduct disorder" and "unsocialized aggressive" behavior and has been treated for behavioral problems on and off throughout his life.

**12.** Another justification of the limit on Phaneuf's purchasing power stems from his outstanding restitution obligation to pay $20,400 to BNE. The court's special condition will help to ensure that Phaneuf satisfies to the best of his ability his restitution obligation rather than spending his money on other things. Because this justification is not attributable to a factor set forth in U.S.S.G. § 5D1.3(b) or the corresponding statutes, 18 U.S.C. §§ 3553, 3583, it does not deserve conclusive weight, but still is a part of the total picture.

"obvious and clear" nor does it implicate the fairness or integrity of judicial proceedings. The condition limiting Phaneuf's purchasing power is effective only during his period of supervised release, does not prohibit expenditures of over $100 but merely requires pre-approval of the probation department, and bears at least an arguable relationship to checking the irresponsible behavior that underlay Phaneuf's crimes.

### 4. Restitution

■■■ Phaneuf argues that the sentencing court erred in ordering restitution in the amount of $20,400 to be paid to BNE, pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664 (1995).[13] Our review is for plain error as Phaneuf did not object to the restitution order at sentencing. *See United States v. Springer*, 28 F.3d 236, 237, 239 (1st Cir.1994).

A sentencing court is permitted to order restitution "to any victim." 18 U.S.C. § 3663(a) (1995).[14] In ordering restitution the court is required to consider:

> the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a) (1995).[15]

■■■ Phaneuf claims that the restitution order is contrary to law for two reasons. First, he asserts that he is incapable of making restitution, citing his history of mental disorders, his lack of professional training, his virtually non-existent employment record, and his lack of assets. Phaneuf predicts that he will likely be incarcerated again as a result of being unable to satisfy the restitu-

tion order. We find Phaneuf's argument unpersuasive. The district court was not required to make explicit findings regarding Phaneuf's ability to pay before ordering restitution, so long as it considered the factors set forth in § 3664(a). *See United States* v. *Newman*, 49 F.3d 1, 10 (1st Cir.1995); *Springer*, 28 F.3d at 239. Moreover, Phaneuf need not be able to pay the restitution award immediately. *See United States v. Lombardi*, 5 F.3d 568, 573 (1st Cir.1993). Restitution awards may be imposed in order to make victims whole should the defendant become able to pay in the future. *See Newman*, 49 F.3d at 10–11. Here, given that Phaneuf is a 26–year–old high school graduate, it is not unforeseeable that he may earn some income when released from prison. Moreover, Phaneuf can later seek a modification of the restitution order in the sentencing court if he can show that it is too onerous. *See Springer*, 28 F.3d at 239 n. 2.

■■■ Second, Phaneuf argues that the district court erred in ordering restitution to be paid to BNE because, at the time of sentencing, BNE had failed and the Federal Deposit Insurance Corporation ("FDIC") had been appointed its receiver. Phaneuf further argues that the FDIC, which succeeded to the assets and liabilities of the failed bank by operation of law, *see* 12 U.S.C. § 1821(d)(2)(A), is not a proper "victim" entitled to restitution under the VWPA.[16] Phaneuf argues that the letter he received from the probation department instructing him to make his restitution payments to the FDIC was improper. He contends that an order instructing him to pay an entity other than BNE had to come from the court rather than the probation department. According to Phaneuf, restitution can only be paid to someone other than the victim, in this case

---

**13.** The VWPA, 18 U.S.C. §§ 3663–3664, was amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, §§ 205, 206, 110 Stat. 1230, 1232 (Apr. 24, 1996). However, the 1996 amendments are effective for sentencing proceedings in cases in which defendant is convicted on or after April 24, 1996. *See* Pub.L. No. 104–132, § 211, 110 Stat. 1232. Therefore, the pre–1996 version, cited throughout this section of the opinion, is controlling in Phaneuf's case.

**14.** *See supra*, note 13.

**15.** *See supra*, note 13.

**16.** Defendant also contends that his Mastercard debts of $20,400 have subsequently been sold to Citibank by the FDIC. However, there is no evidence of this in the record before us.

BNE, pursuant to the following provision of the VWPA:

> the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation.

18 U.S.C. § 3663(e)(1) (1995).[17] Since the court did not award restitution to the FDIC pursuant to this provision, Phaneuf argues that the restitution order was improper.

We find no plain error either in the court's restitution order or in the probation department's instructions to make restitution payments to the FDIC. BNE was in fact a victim of Phaneuf's fraud when committed. The failure of BNE and the appointment of the FDIC as its receiver had not been brought to the court's attention when it entered its order, hence the court order understandably named BNE. Given that the FDIC "steps into the shoes" of a failed bank, *O'Melveny & Myers v. FDIC,* —— U.S. ——, ——, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994), we see no reason why the probation department should not substitute the FDIC for the failed bank as the "victim" of Phaneuf's fraud. *See United States v. Haddock,* 50 F.3d 835, 841 (10th Cir.1995) (holding that restitution was due a bank that purchased one of the banks involved in the loan transactions for which defendant was convicted); *United States v. Smith,* 944 F.2d 618, 621–22 (9th Cir.1991) (holding that the VWPA "is intended to encompass both direct and indirect victims of criminal acts" and therefore allowing the FSLIC to receive restitution), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992); *United States v. Rochester,* 898 F.2d 971, 980 n. 7 (5th Cir.1990) (holding that the district court may award the FSLIC restitution under the VWPA when the FSLIC has acquired the claims of an insolvent savings and loan that was the victim of defendant's crime). Needless to say, such matters remain subject to the district court's continuing oversight and control, but we see no error subject to appellate correction at this juncture.

17. *See supra,* note 13.

### III.

For the foregoing reasons, the judgment and sentence of the district court is *affirmed.*