[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11002
_____

D.C. Docket No. 1:13-cr-20457-JIC-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NIVIS MARTIN,
a.k.a. Nivis Alvarez,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 25, 2018)

Before JORDAN and JILL PRYOR, Circuit Judges, and REEVES,[*] District Judge.

JILL PRYOR, Circuit Judge:

_____

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

This is Nivis Martin's second appeal relating to her conviction for crimes arising out of a mortgage fraud scheme in Miami, Florida. In her first appeal, Martin challenged the district court's order that she pay nearly $1 million in restitution to three banks under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. We concluded that even though the banks were not the original lenders and merely purchased the fraudulently procured mortgages on the secondary market, they still could recover restitution as victims under the MVRA. We nonetheless remanded for the district court to determine anew the restitution amounts, taking into account that the successor lenders may have paid discounted prices to purchase the fraudulently procured mortgages on the secondary market.

On remand, the government, apparently while preparing to address whether the successor lenders paid discounted prices to acquire the mortgages, learned that the facts of the underlying transactions did not support its theories advanced at the first sentencing hearing about why two of the lenders were victims under the MVRA. At the restitution hearing on remand, the government contended for the first time that the Federal Deposit Insurance Corporation (the "FDIC") was the proper victim for one property because it had taken over as receiver for the lender that had purchased the mortgage. Regarding a second property, the government claimed, again for the first time, that Bank of America Home Loans ("Bank of

America") was a victim, not because it purchased the loan from the original lender, but because it acquired the original lender through a corporate merger. The district court accepted the government's new arguments and entered a new restitution award, determining that the FDIC and Bank of America were victims under the MVRA.

Martin now challenges the district court's determination that the FDIC and Bank of America were victims under the MVRA. She also challenges the district court's recalculation of the restitution amounts, arguing that the government again failed to present evidence regarding the amounts paid by the purported victims to purchase the fraudulently procured mortgages. After careful review, we affirm the district court's order in part and remand with limited instructions to correct a minor mathematical error regarding Bank of America's restitution award.

## I.     BACKGROUND

### A.     The Fraudulent Scheme

Martin's mortgage fraud scheme involved three properties in Miami, but only two of those properties are relevant for purposes of restitution in this appeal.[1] The first property was an apartment that Martin and her ex-husband owned (the "Miami Apartment"), which they purported to sell to Martin's father for $495,000.

_____

[1] The bank that owned the mortgages on the third property declined any restitution after we remanded this case following Martin's first appeal. As a result, the government decided not to pursue any restitution related to that property. The details surrounding that property are therefore irrelevant to our decision here.

To finance the purchase, Martin's father applied to First Franklin Corp. ("First Franklin") for two mortgages totaling the full purchase price. In his mortgage application, Martin's father lied about his assets and monthly income and failed to disclose that he was related to Martin or that she had given him the money for his initial deposit. First Franklin approved the application and loaned Martin's father the money. After the sale closed, Martin and her ex-husband paid off the previous mortgage on the property and pocketed about $216,000 in cash. For over a year, Martin and her ex-husband paid the new mortgages. Then they stopped paying, the mortgages went into default, and the Miami Apartment was sold at a short sale for $130,000.

The second property was a residential home in Miami Beach that Martin and her ex-husband purchased for $1,550,000 (the "Beach House"). They funded the purchase with two mortgages from LoanCity, Inc., in the amounts of $1,085,000 and $465,000. LoanCity issued these mortgages as stated income loans, meaning it did not verify Martin's and her ex-husband's incomes. Their mortgage application contained false information about their monthly income and assets. Based on Martin and her ex-husband's misrepresentations, LoanCity approved the mortgages. Martin and her ex-husband eventually defaulted on the loans, and the Beach House was sold at a short sale for $710,000.

4

Martin was indicted, along with several others, for her role in the fraud. She was charged with (1) conspiracy to commit bank and wire fraud, (2) bank fraud, and (3) wire fraud. A jury found her guilty on all counts.

## B.    The First Sentencing

At sentencing, the government sought imprisonment and a restitution award. The pre-sentence report ("PSR") stated that Bank of America was the victim for the mortgages on the Miami Apartment because, according to the government, Bank of America was a successor lender that had purchased the mortgages from First Franklin. The government offered no evidence or testimony to support its position that First Franklin had sold the mortgages for the Miami Apartment. The district court nonetheless accepted the government's assertion that Bank of America had purchased these mortgages and found that Bank of America was the victim, awarding it $358,781.12 in restitution. The district court arrived at this amount by subtracting the short sale purchase price from the outstanding principal due on the loans. The district court failed to consider whether Bank of America had purchased the mortgages from First Franklin at a discount.

As for the Beach House mortgages, the PSR noted that the loans had passed to two different successor lenders: the $1,085,000 mortgage had passed to OneWest Bank FSB ("OneWest"), while the $465,000 mortgage had passed to Saxon Mortgage Services, Inc. ("Saxon"). The PSR stated that Saxon no longer

5

existed and there was no identifiable successor in interest, so the PSR included in the restitution amount only the loss attributable to the loan owned by OneWest. Though it was not clear from the PSR itself, evidence at trial showed that shortly after LoanCity issued the mortgage, IndyMac Bank FSB ("IndyMac") purchased from LoanCity a pool of mortgages, including the $1,085,000 mortgage on the Beach House. Evidence at trial suggested that IndyMac was acquired by OneWest. At the sentencing hearing, Martin argued that the government had failed to prove that OneWest owned the mortgage at the time of the short sale, but the district court nonetheless found that OneWest was the victim.

The district court awarded OneWest $375,000 in restitution. The district court calculated the restitution amount by taking $1,085,000—the amount of the mortgage—and subtracting the proceeds from the Beach House's short sale. The district court used the entire amount of the mortgage because, although Martin and her ex-husband made some payments on this mortgage, they never paid down any of the principal. Martin and her ex-husband then defaulted on the mortgage, and the Beach House was sold at a short sale. As with the mortgages on the Miami Apartment, the district court failed to consider whether IndyMac had purchased the Beach House mortgage from LoanCity at a discount.

6

## C.    Martin's First Appeal

Martin appealed her conviction and sentence.  We affirmed Martin's conviction but vacated the restitution award.  *United States v. Martin* ("*Martin I*"), 803 F.3d 581, 596 (11th Cir. 2015).  We concluded that Bank of America and OneWest were victims for purposes of restitution because they were "successor lenders who subsequently purchased the fraudulently procured mortgages and owned them when the properties were sold in short sales."  *Id.* at 592.  Even though we agreed with the district court that Bank of America and OneWest were victims, we disagreed with how the district court calculated their restitution awards.  We directed that "a successor lender's restitution award should turn on how much it paid to acquire the mortgage" and that its restitution would "typically equal the sum that lender paid to acquire the mortgage less the principal payments it received and the amount it recouped in the short sale."  *Id.* at 595.  We then remanded because the government had failed to present "evidence regarding the actual price the successor lenders paid for the mortgages" or "evidence to support a conclusion that the outstanding principal balances were reasonable estimates of what the successor lenders paid to acquire the fraudulently obtained loans."  *Id.* at 596.

7

**D.    Post-Remand Proceedings**

On remand, the district court held a hearing on restitution.  At the hearing, the government presented new evidence regarding the ownership of the Miami Apartment and Beach House mortgages after they were issued by the original lenders.

As to the mortgages on the Miami Apartment, the government changed its position, arguing for the first time that First Franklin had never sold the mortgages and continued to own them at the time of the short sale.  The government explained that "Bank of America never purchased th[ese] loan[s] individually." Doc. 244 at 11.[2]  Instead, according to the government, Bank of America ultimately obtained these mortgages through its merger with Merrill Lynch, which was the parent company of First Franklin at the time of the Miami Apartment's short sale.  The government also noted that at the first sentencing the district court gave Martin credit for the full $130,000 short sale price for the Miami Apartment. The government argued that, in recalculating Bank of America's restitution, the district court should instead credit only $103,621.83, representing the proceeds that First Franklin actually received from the short sale.  The district court accepted the government's arguments and awarded Bank of America $392,434.68 in restitution.

---

[2] All citations in the form "Doc #" refer to the district court docket entries.

8

The government similarly changed its position regarding the $1,085,000 Beach House mortgage, arguing for the first time that the victim was not OneWest, but the FDIC, as receiver for IndyMac. The government submitted as evidence the FDIC's victim impact statement, which noted that the FDIC had been appointed as the receiver for IndyMac and claimed that "[t]he FDIC is the only party entitled to restitution for losses suffered by the failed insured financial institution." Doc. 228-1 at 1. The district court accepted the government's new argument and again awarded $375,000 in restitution, but this time in favor of the FDIC rather than OneWest.

Martin now challenges the district court's conclusion that Bank of America and the FDIC qualify as victims under the MVRA.[3] She also argues that the district court improperly recalculated the restitution amounts owed to these entities because, despite our instructions in *Martin I*, the government failed to show the specific prices that Bank of America and IndyMac paid to purchase the mortgages from the original lenders.

---

[3] We note that the law of the case doctrine did not prevent the district court from changing its findings regarding the identity of the victims of Martin's fraud. "The law of the case doctrine dictates that an appellate decision is binding in all subsequent proceedings in the same case unless the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice." *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1271 (11th Cir. 2015) (internal quotation marks omitted). Because the government presented new evidence about the identities of the victims after remand, the district court was not bound by the law of the case doctrine.

## II.     STANDARDS OF REVIEW

We review whether an entity is a victim under the MVRA *de novo*.  *Martin I*, 803 F.3d at 593.  We review factual findings underlying a restitution order for clear error.  *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007).  We may infer from the district court's explicit factual findings and conclusions implied factual findings that are consistent with its judgment.  *See id.* at 1334 (citing *United States v. $242,484.00*, 389 F.3d 1149, 1154 (11th Cir. 2004)).  A factual finding is clearly erroneous when even though there is some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  *Id.* at 1330.  We review the amount of restitution ordered for an abuse of discretion.  *Id.*

## III.     DISCUSSION

**A.     The District Court Did Not Err in Concluding that Bank of America and the FDIC Were Victims Under the MVRA.**

The MVRA provides that when a district court sentences an individual convicted of certain crimes, including those for which Martin was convicted, "the court shall order . . . that the defendant make restitution to the victim of the offense."  18 U.S.C. § 3663A(a)(1).  "To be considered a 'victim' under the MVRA, an entity must have been 'directly and proximately harmed as a result of the commission of the defendant's offense.'"  *Martin I*, 803 F.3d at 593 (alteration adopted) (quoting 18 U.S.C. § 3663A(a)(2)).  In other words, "a victim must have

10

suffered harm, and the defendant must have proximately caused that harm." *Id.* The government bears the burden of proving by a preponderance of the evidence that a particular entity was a victim of the defendant's offense. *Id.* The first issue we must resolve in this appeal is whether the district court erred in concluding that Bank of America and the FDIC were victims under the MVRA.

> 1.    *The District Court Did Not Err in Concluding that Bank of America Was a Victim as the Successor in Interest to First Franklin.*

During Martin's initial sentencing, the government's position was that Bank of America was the victim of Martin's fraud because it had purchased the Miami Apartment mortgages from First Franklin and was therefore a successor lender. After we remanded in *Martin I*, however, the government adopted a new theory. It argued that Bank of America was the victim because First Franklin owned the Miami Apartment mortgages at the time of the short sale and incurred a loss as a result of the short sale, and Bank of America became the successor in interest to that loss when it acquired Merrill Lynch, First Franklin's parent company.

Martin does not dispute that Bank of America acquired First Franklin when it purchased Merrill Lynch. Instead, she argues that the government failed to show that First Franklin suffered a loss to which Bank of America could have become the successor in interest. According to Martin, the government failed to show that First Franklin suffered a loss at all because it offered insufficient proof that First Franklin continued to own the Miami Apartment mortgages at the time of the short

11

sale.[4] The district court rejected this argument. Implicit in its entry of a restitution award in favor of Bank of America was a finding that First Franklin never sold the mortgages and continued to own them when the property was sold at the short sale. *See Robertson*, 493 F.3d at 1334. Had the district court not implicitly made this finding, there would have been no basis for concluding that Bank of America was a victim because it would have had no loss to inherit from First Franklin.

During the restitution hearing, the government attempted to prove that First Franklin continued to own the Miami Apartment mortgages at the time of the short sale by offering the testimony of Mary Davids, a mortgage resolution associate for Bank of America. Some of Davids's testimony was imprecise and suggested that she lacked direct knowledge of whether First Franklin sold the mortgages. For example, when Davids was initially asked if First Franklin ever sold the mortgages, she answered "[n]ot to my knowledge, no." Doc. 244 at 39. But then when she was asked during cross examination if she knew whether First Franklin sold the Miami Apartment mortgages as part of an asset-backed security, she answered, "I don't know." *Id.* at 45. Davids's testimony also was equivocal

---

[4] In addition to arguing that the government offered insufficient proof, Martin also relies on the trial testimony of Gelcys Falcon, a former underwriter for First Franklin, who testified that First Franklin issued subprime loans that were then packaged and sold to private investors. But Falcon provided only general testimony about First Franklin's subprime loan practices. She did not know whether First Franklin sold all of its loans, nor did she testify more specifically about whether First Franklin sold the Miami Apartment mortgages. Thus, Falcon's trial testimony fails to show that First Franklin sold the Miami Apartment mortgages before the short sale occurred.

12

regarding Bank of America's role with respect to the mortgages. When Martin's counsel asked Davids if she knew whether Bank of America owned the mortgages or merely serviced them, she answered only that she knew Bank of America was the servicer. And when Martin's counsel asked Davids whether she could testify that Bank of America actually owned the mortgages, she responded that she "didn't review that information." *Id.* at 46.

Even if Davids's testimony failed to provide direct evidence that First Franklin never sold the mortgages, however, it was at least sufficient for the district court to draw that inference. First, Davids clarified late in her testimony, in response to questioning by Martin's counsel, that her review would have revealed if First Franklin sold the mortgages before the short sale:

> Q.    [D]id you review all the records necessary for you to say one way or the other whether or not First Franklin or anyone else re-sold this loan as part of an asset-backed security?
>
> A.    Yes, I would be able to determine that based on my review, because based on my servicing records, it reflects all the history of the loan, which is why I'm able to review and produce the short-sale documents . . . .

*Id.* at 48. From the fact that Davids's records included the short sale documents, the district court reasonably could have inferred that First Franklin never sold the mortgages. Second, Davids testified that First Franklin received the proceeds from the Miami Apartment's short sale, which suggested that First Franklin was either the owner or the servicer of those mortgages when the short sale occurred. Given

13

Davids's repeated testimony that Home Loan Services—another entity acquired by Bank of America—serviced the Miami Apartment mortgages, the district court reasonably could have inferred that First Franklin must have been the owner rather than the servicer of the mortgages. Because Davids's testimony was sufficient to support these inferences, we cannot conclude that the district court clearly erred in finding that First Franklin continued to own the Miami Apartment mortgages when the short sale occurred.

We reiterate that Martin challenges only whether First Franklin suffered a loss in the first place. She does not dispute that Bank of America acquired First Franklin via its merger with Merrill Lynch, nor does she dispute that an acquiring corporation inherits the losses of its target corporation, making the successor a victim for purposes of restitution. Because Martin raises no argument that successors in interest are not entitled to restitution owed to their predecessors, we assume, without deciding, that they may indeed recover their predecessors' losses through restitution. We therefore affirm the district court's conclusion that Bank of America was entitled to restitution under the MVRA as a victim of Martin's fraud.

> 2.    *The District Court Did Not Err in Concluding that the FDIC Was a Victim as the Receiver for IndyMac.*

Martin also contends that the FDIC was not a victim of her fraud because it was merely appointed as the receiver for IndyMac upon the bank's failure. In

14

Martin's view, a receiver cannot count as a victim because a receiver is obligated to distribute any money recovered from a restitution award to the failed institution's former depositors, creditors, and shareholders.  In other words, according to Martin, a receiver is simply a pass-through entity, while the failed institution is the true victim.

We disagree.  When the FDIC acts as a receiver for a failed bank "it steps into the shoes of the failed institution and takes possession of both the assets and the liabilities."  *Vernon v. FDIC*, 981 F.2d 1230, 1234 (11th Cir. 1993).  If IndyMac had not failed and had been awarded restitution payments from Martin, it could have used the proceeds of those payments to fund the bank's deposits, pay off its bills, or return capital to its shareholders.  The FDIC assumed these same rights and responsibilities when it was appointed as receiver.  *See* 12 U.S.C. § 1821(d)(2)(A)(i) (providing that as a receiver the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution").  Because the FDIC stepped into IndyMac's shoes upon the bank's failure, the district court did not err in concluding that the FDIC was the victim of the loss on the Beach House mortgage.  *See United States v. Phaneuf*, 91 F.3d 255, 265 (1st Cir. 1996) ("Given that the FDIC steps into the shoes of a failed bank, we see no reason why the probation department should not substitute the FDIC for the failed bank as the victim of Phaneuf's fraud." (internal quotation marks and citation omitted)).

15

**B.**     **The District Court Did Not Abuse its Discretion in Calculating the Amounts of the Restitution Awards.**

Martin contends that, even if Bank of America and the FDIC were indeed victims under the MVRA, the district court abused its discretion in calculating the amount of restitution owed to each of these entities. We will address each of the district court's calculations in turn.

   *1.*     *The District Court Did Not Abuse Its Discretion in Calculating Bank of America's Restitution Award.*

Martin first challenges the district court's calculation of Bank of America's restitution award. She argues that the district court failed to adhere to our instructions in *Martin I* because it failed to account for the amount that Bank of America paid First Franklin in exchange for the Miami Apartment mortgages. Martin notes that the district court calculated Bank of America's restitution based solely on the outstanding principal due on the Miami Apartment, just as it had done during the first sentencing hearing.

Martin's argument fails because, despite the position taken by the government during the first sentencing hearing, the evidence at the second hearing showed that Bank of America never purchased the Miami Apartment mortgages from First Franklin. On remand, the government changed its theory and instead showed that Bank of America was a victim because it inherited the loss suffered by First Franklin when it acquired Merrill Lynch, which was First Franklin's parent

16

company.  If Bank of America had purchased the Miami Apartment loans from First Franklin on the secondary market, then the district court would have had to consider how much Bank of America paid First Franklin for the loans.  *See Martin I*, 803 F.3d at 595 ("[A] successor lender's restitution award should turn on how much it paid to acquire the mortgage.").  But our decision in *Martin I* was silent regarding the proof of loss necessary when the fraudulently procured loan is acquired through a corporate merger rather than on the secondary market.  Martin argues that the government's evidence was insufficient because it offered "no record testimony about the financial details surrounding the merger[]" of Merrill Lynch into Bank of America.  Appellant's Br. at 16.  Given the complexities of such a merger and its size relative to the mortgages at issue, however, we cannot conclude that the government was required to show the specific role the Miami Apartment mortgages played in the merger.  *See United States v. Ritchie*, 858 F.3d 201, 217 (4th Cir. 2017) (holding that when the victim is the successor in interest to the loss rather than a successor lender, restitution should be based on the victim's "total, actual loss," irrespective of the "specifics" of the victim's acquisition of the original lender).

In sum, the district court did not abuse its discretion in relying solely on the outstanding balance of the Miami Apartment mortgages in calculating Bank of America's restitution award.  That is not to say, however, that we necessarily

17

would have reached the same conclusion as the district court if we were reviewing the district court's decision *de novo*, or that the type of evidence presented by the government in this case would be sufficient to prove a victim's loss in other cases where the original lender is acquired by a different corporate entity.[5]

2.    *The District Court Did Not Abuse Its Discretion in Calculating the FDIC's Restitution Award.*

Martin next challenges the $375,000 restitution award in favor of the FDIC. She argues that the district court erred in calculating the award because it subtracted the Beach House's short sale purchase price from the amount of principal owed on the mortgage. She relies on *Martin I* to argue that a proper calculation would have involved the difference between the short sale purchase price and the amount that IndyMac paid to purchase the mortgage from LoanCity. She contends that because the government failed to offer any evidence as to the amount that IndyMac paid to purchase the mortgage, the district court should have declined to award any restitution to the FDIC at all.

True, in *Martin I* we counseled that a court generally should calculate restitution in a mortgage fraud case by using the amount the successor lender paid

---

[5] We note that the district court appears to have made a small error in arithmetic when calculating Bank of America's restitution award. According to Davids's testimony, the unpaid principal balances for the Miami Apartment mortgages were $396,492.78 and $99,536.73, for a total of $496,029.51. The amounts recovered as a result of the short sale were $93,621.83 on the first mortgage and $10,000 on the second mortgage, for a total recovery of $103,621.83. Subtracting the total amount recovered at the short sale from the total of the unpaid principal balances yields a difference of $392,407.68. The district court instead awarded $392,434.68. We remand for the district court to correct this $27 discrepancy.

to acquire the mortgage. *Martin I*, 803 F.3d at 595. But we also explained that when a loan is bundled into a security, it may be difficult to identify with any precision the proceeds that the lender received for a specific mortgage. *Id.* at 596. We acknowledged that a district court may at times award restitution without evidence about the loan's actual purchase price because, in some cases, a "reasonable estimate of the loan's purchase price . . . may very well be the outstanding principal balance." *Id.* (internal quotation marks omitted).

This is such a case. Here, IndyMac purchased the Beach House mortgage from LoanCity as part of a bulk acquisition of loans. The underwriting process for this bulk purchase began roughly two weeks after LoanCity closed on the Beach House mortgage. IndyMac took possession of that mortgage a mere three months later. The close temporal proximity between LoanCity's closing on the Beach House mortgage and IndyMac's acquisition of that mortgage suggests that the mortgage was not part of a package of distressed loans, making it likely that the loan was sold for something close to face value. This, in turn, means that the outstanding balance of the Beach House mortgage was a "reasonable estimate" of the amount that IndyMac paid to purchase it. Even though the government probably could have presented evidence that more precisely estimated the price at which IndyMac purchased the Beach House mortgage, we are mindful of the standard of review that we must apply here. Given the timing of the sale to

19

IndyMac, we cannot say that the district court abused its discretion in calculating the FDIC's restitution award based on the outstanding balance of the Beach House mortgage.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court but remand for the limited purpose of amending Bank of America's restitution award so that it correctly totals $392,407.68.

**AFFIRMED IN PART and REMANDED IN PART.**