**UNITED STATES, Appellee,**

v.

**Henry J. PEPPE, Defendant–Appellant.**

**No. 95–2121.**

United States Court of Appeals,
First Circuit.

Heard March 5, 1996.

Decided March 29, 1996.

---

Richard H. Gens with whom Martin K. Leppo, Boston, MA, was on brief for defendant-appellant.

Gary S. Katzmann, Assistant United States Attorney, with whom Donald K. Stern, Boston, MA, United States Attorney, was on brief for appellee.

Before SELYA, STAHL and LYNCH, Circuit Judges.

STAHL, Circuit Judge.

Pursuant to a plea agreement with the government, defendant-appellant Henry J. Peppe pleaded guilty to a three-count indictment charging him and his codefendant, Joseph S. Mongiello, with making extortionate extensions of credit and using, and conspiring to use, extortionate means to collect and attempt to collect an extension of credit. The district court sentenced Peppe to twenty-seven months' incarceration followed by three years' supervised release, a special assessment fee, and a $10,000 fine. Peppe now appeals the imposition of the fine and a condition of his supervised release requiring probation-office approval prior to any incurring of new credit charges or opening of new credit lines.[1]

## I.

### Factual Background and Prior Proceedings

#### A. Offense Conduct

We accept the facts of the offense as set forth in the unchallenged portions of the Presentence Report ("PSR"). *See United States v. Grandmaison*, 77 F.3d 555, 557–558 (1st Cir.1996).

In the summer of 1993, Peppe and Mongiello loaned to John Wiltshire, a self-employed contractor, $3,000 upon which Wiltshire was required to pay 5% interest per week. When Wiltshire was late in making his loan payments, Peppe and Mongiello would intimidate him and his wife through repeated, threatening telephone calls. In June 1994, Wiltshire temporarily stopped making the weekly interest payments because he could no longer afford them. In July 1994, Wiltshire agreed to do some construction work at Peppe's home in return for forgiveness of part of the debt.

---

1. At oral argument before this court, Peppe withdrew his challenge to the court's imposition of an additional condition of supervised release: that Peppe grant access to any and all financial information requested by the probation office. Accordingly, we do not address this argument.

On August 1, 1994, Wiltshire contacted the Federal Bureau of Investigation ("FBI") about his situation. By that date, he had paid about $6,000 in interest on the $3,000 loan. As part of the FBI's subsequent investigation, Wiltshire tape-recorded telephone conversations and meetings with Peppe and Mongiello, including conversations accompanying five additional payments on the loan. On one such occasion, Peppe referred to his "cuff list" of delinquent loan-shark debtors to see how far behind Wiltshire was. In October 1994, Wiltshire told Peppe that he would not make further payments on the loan and indicated that he had relocated himself and his wife. Upon hearing this, Peppe became very angry and warned Wiltshire, "I will catch up to you" and "I will find you." At the time of his arrest, Peppe had in his possession a "cuff list" listing ten debtors overdue in their payments.

## B. The Plea Agreement

The parties agreed that Peppe's plea would be tendered pursuant to Fed. R.Crim.P. 11(e)(1)(B), and that, "[w]ithin the maximum sentence" possible under applicable law, "the sentence to be imposed is within the sole discretion of the sentencing judge." Peppe acknowledged in the plea agreement that he faced a maximum penalty of 20 years' incarceration and a $250,000 fine on each count. The agreement stated that, under the United States Sentencing Guidelines, Peppe's Base Offense Level was 20 and the parties would recommend to the court a three-level reduction for Peppe's acceptance of responsibility, resulting in a Total Offense Level of 17.

## C. The Presentence Report

In the PSR, Peppe's Total Offense Level was computed at 17, his Criminal History Category at I, and the applicable Guideline imprisonment range was found to be twenty-four to thirty months followed by two to three years of supervised release. The fine range was determined at $5,000 to $50,000, pursuant to U.S.S.G. §§ 5E1.2(c)(1) and (2). While the government contended that the victim, Wiltshire, was entitled to restitution of the interest paid, $6,000, the PSR stated that the issue of granting restitution in loan-sharking cases had never been addressed in the District of Massachusetts, and relayed the matter to the court. Peppe complained that the government's restitution figure came only from Wiltshire and was exaggerated, but he did not offer his own calculation and did not otherwise object to that portion of the PSR.

The PSR also included the following additional facts to which neither party objected. Peppe is a forty-year-old high school graduate with previous work experience as a bartender, temporary postal employee, greyhound-dog owner and racer, and employee at his father's smoke shop. Peppe and his wife, Jayne Zannino Peppe, have three children, the youngest of whom may have a serious medical condition. Peppe's wife manages the care of the family and home, working part-time as a real estate agent. Peppe's assets total $24,056.50, comprised of, *inter alia,* bank accounts, securities, life insurance, real estate, and an automobile.[2] His liabilities total $50,000, made up of loans from his brothers for attorney fees incurred in his defense. The PSR reports that Peppe has a negative net worth of $25,943.50 and a monthly negative cash flow of $193.

## D. The Sentencing Hearing

The district court adopted the factual findings and Sentencing Guideline applications set forth in the PSR. At the sentencing hearing, the district court confirmed the PSR's calculation of Total Offense Level and Guideline ranges for the fine and imprisonment term. The government recommended thirty months' incarceration, a fine of $5,000 and an order of restitution of $6,000. Peppe responded that restitution should not be an issue in sentencing, and requested a hearing should it become a factor. With respect to restitution, the court stated:

> [T]he record, frankly, is not clear enough for me to do anything but speculate concerning the proper level of restitution. I decline to take any further time before reaching a sentence in this case to attempt to fashion a restitutionary remedy, particularly in light of the fact that there is a

2. As of the time of the balance sheet set forth in the PSR, Peppe no longer owned greyhounds.

potential for a fine. And I will impose a fine in this case.

The district court sentenced Peppe to twenty-seven months' imprisonment on each count, to be served concurrently, followed by three years of supervised release. The court further imposed a $10,000 fine, with interest waived, to be paid in installments. In addition to the standard conditions of supervised release, the court ordered that Peppe could not "incur new credit charges or open additional lines of credit without prior approval of the probation officer" who, in turn, would take into consideration Peppe's compliance with the fine payment schedule. At the conclusion of the sentencing hearing, the court opined:

> I think I needn't say very much about the reasons for the sentence. I think Mr. Pep[p]e understands that this is one of the costs of doing this kind of business and that there is imposed in connection with those costs a fine component, and a component [of] being taken away from loved ones at critical times.

## II.

### Discussion

■ Peppe now argues that the court erred by imposing the $10,000 fine and by prohibiting him from incurring new credit charges or opening additional lines of credit without prior approval of the probation office. Neither challenge was raised before the sentencing judge, however, and, as Peppe concedes, our review is for plain error only. *United States v. Carrozza*, 4 F.3d 70, 86–87 (1st Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1644, 128 L.Ed.2d 365 (1994).

### A. Imposition of $10,000 Fine

Peppe contends that the court did not consider his financial resources and earning ability in assessing the $10,000 fine. He points out that his financial information in the record is undisputed, and argues that it establishes both his current inability to pay the fine and the unlikelihood that he will be able to pay it in the future. Peppe also suggests that the fine contained a "restitutional component," noting that its amount reflects an approximate combination of the government's recommendation for a fine ($5,000) and restitution ($6,000), and that the court did not consider the requisite factors to support a restitution remedy. He maintains that, in addition to waiving the interest on the fine, the court should also have waived the fine itself and imposed alternative sanctions such as community service.

■ When imposing a fine and its conditions, a district court must consider, *inter alia*, "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources" and "the burden that the fine places on the defendant and his dependents relative to alternative punishments." U.S.S.G. § 5E1.2(d); *see also* 18 U.S.C. § 3572(a). The defendant bears the burden of demonstrating that his case warrants an exception to the rule that a fine be imposed. *United States v. Savoie*, 985 F.2d 612, 620 (1st Cir. 1993); U.S.S.G. § 5E1.2(a) ("The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine"). Moreover, a district court need not make express findings regarding a defendant's financial condition so long as the record is sufficient for adequate appellate review. *Savoie*, 985 F.2d at 620 (citing *United States v. Wilfred Am. Educ. Corp.*, 953 F.2d 717, 719–20 (1st Cir.1992)). When a challenge to the imposition of a fine is fully preserved for appellate review, we review for abuse of discretion. *Savoie*, 985 F.2d at 620. But here, because Peppe did not object below, we review for plain error. *Carrozza*, 4 F.3d at 86–87.

■ First, we do not agree with Peppe that the court failed to consider his financial condition when imposing the fine. The PSR, adopted by the district court, detailed Peppe's assets, liabilities, and monthly cash flow. *Wilfred Am. Educ. Corp.*, 953 F.2d at 719–20 (reviewing court will not presume that the court below ignored relevant evidence in the record). The court's consideration of Peppe's financial condition is evident in its waiver of interest on the fine and written order stating that it "has determined

that the defendant does not have the ability to pay interest." Indeed, in choosing $10,000, the court chose a fine at the lower end of the applicable $5,000 to $50,000 range.

■ Second, although it is undisputed that Peppe's net worth and monthly cash flow are negative, these facts alone do not compel the conclusion that a fine should not be imposed. Rather, it was Peppe's burden to establish that he was not able to pay the fine, with or without a reasonable installment schedule. At no time did Peppe offer evidence to establish his inability to pay, and his inability to pay does not follow inexorably from the facts in the record. *See United States v. Olivier–Diaz*, 13 F.3d 1, 5 (1st Cir.1993) (noting that plain error will not be found where defendant asserts a fact that he failed to ask the sentencing court to find, "unless the desired factual finding is the only one rationally supported by the record below."). Interestingly, all of Peppe's debt is owed to family members who funded his defense costs. Further, Peppe does not address his future ability to pay the fine, and given his age, good health, and past employment experience, he cannot complain in this regard.

■ Finally, Peppe contends that the court fashioned the fine to include an impermissible "restitutionary component." This argument lacks merit. The court explicitly stated that a restitutionary remedy would be purely speculative, and simply declined to take that route. The court did not express the desire to compensate the victim, Wiltshire; rather, it expressed the goal to punish Peppe. Accordingly, the court imposed the fine in an amount higher than recommended by the government, but still at the lower end of the Guideline range. The record shows that Peppe had ample notice of both the potential for a fine and the applicable fine range, and never claimed the inability to pay any amount.

We find no error—certainly no plain, or obvious, error—in imposing the $10,000 fine. We decline, therefore, to order any relief sought by Peppe regarding the fine.

**B. Probation Office Approval Prior to Obtaining New Credit**

Peppe argues that requiring probation office approval prior to his incurring new credit charges or obtaining additional lines of credit is not reasonably related to his offense and constitutes an impermissible occupational restriction that inhibits his pursuit of lawful business activity. He also contends that, under the Guidelines, the only purpose for this condition is to ensure compliance with a fine payment schedule; accordingly, he asks this court to modify the condition to resemble U.S.S.G. § 5E1.2(g).

■ A district court may impose a condition of supervised release that is "reasonably related" to: the defendant's offense, history, and characteristics; the need for deterrence from further criminal conduct; public protection; and effective correctional treatment of the defendant. U.S.S.G. § 5D1.3(b); *see also United States v. Thurlow*, 44 F.3d 46, 47 (1st Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 1987, 131 L.Ed.2d 874 (1995). Peppe's offense conduct involved the extortionate extension of credit. His "cuff lists" of delinquent loan-shark debtors, evidenced in the record, suggest that his extortionate lending activity was not limited to the identified victim, Wiltshire. The condition of prescreening new credit charges and credit lines is a reasonable information-gathering device for the probation office to monitor Peppe's use of money; when Peppe desires new credit, the probation office may inquire as to its purpose and planned disbursement. Moreover, as the district court indicated at sentencing, the probation office could also use that opportunity to monitor Peppe's compliance with the fine payment schedule. Therefore, the condition meets the requirements of § 5D1.3(b) because it is reasonably related to Peppe's offense, preventing his participation in further extortionate lending, and ensuring his payment of the fine.

Peppe suggests that the credit condition inhibits his ability to work or engage in lawful business activities, in derogation of the requirements of U.S.S.G. § 5F1.5(a).[3] We

---

**3.** U.S.S.G. § 5F1.5(a) provides that a court may bar or limit a defendant's participation in a

"specified occupation, business, or profession" if it determines that such participation bears a

disagree. First, § 5F1.5(a) is inapplicable because Peppe fails to explain how the court's condition affects his participation in a "*specified* occupation, business, or profession." *Id.* (emphasis added). Even assuming it is an "occupational restriction" within the meaning of § 5F1.5, it is appropriate for many of the same reasons that it is a proper condition of supervised release under § 5D1.3(b). *See supra* note 3 (noting criteria considered in occupational-restriction condition). Second, the condition requires only prior approval of the probation office; it is not an absolute bar to incurring credit charges or obtaining new credit, and it applies only for the duration of the supervised release. Thus, we do not see, and Peppe has not explained, how this condition impermissibly restricts his lawful business activities.

■ Finally, we find Peppe's argument that U.S.S.G. § 5E1.2(g) prohibits the condition in his case to be disingenuous. *See* U.S.S.G. § 5E1.2(g) (providing that a district court "may impose a condition *prohibiting* the defendant from incurring new credit charges or opening additional lines of credit *unless he is in compliance with the payment schedule* ") (emphasis added). Here, the district court did not "prohibit" Peppe from obtaining credit, it only required prior approval. Further, simply because the Guidelines permit the condition in the circumstance reflected in § 5E1.2(g) does not mean that a court cannot employ it in other cases under § 5D1.3(b), the provision generally guiding conditions of supervised release. Finally, we decline to modify the credit conditions imposed on Peppe to "comport" (as Peppe puts it) with section 5E1.2(g), which would allow Peppe to forego credit pre-screening as long as he complied with the payment schedule. That condition is not what the district court deemed appropriate in its carefully fashioned sentence, and we discern no reason or basis to disturb the court's decision.

The district court did not err in imposing the condition that Peppe obtain prior approv-

al from the probation office for new credit charges or lines of credit.

## III.

### Conclusion

Nothing more need be said. For the foregoing reasons, all of Peppe's challenges on appeal are without merit.

**Affirmed.**

---

"reasonably direct relationship" to the relevant offense conduct, and the restriction "is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in [similar unlawful conduct]."