USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1455

 UNITED STATES,

 Appellee,

 v.

 MICHAEL MERRIC,

 Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
Gibson, Senior Circuit Judge,
and Lipez, Circuit Judge.

 Dawn M. Pelletier with whom Pelletier & Faircloth was on brief
for appellant.
 Margaret D. McGaughey, Assistant United States Attorney, with
whom Jay P. McCloskey, United States Attorney, and James L.
McCarthy, Assistant United States Attorney, were on brief for
appellee.

January 29, 1999

 BOUDIN, Circuit Judge. On May 21, 1996, Michael Merric
walked into the Margaret Chase Smith Federal Building in Bangor,
Maine, with a homemade, double-barreled shotgun tucked into a
bedroll. He told the security officer that he was going to the
office handling social security matters in order to change his
address. Later information reveals that Merric was at the time
homeless and mentally disturbed.
 The shotgun was discovered after Merric placed the
bedroll on the conveyor belt of the x-ray machine at the building's
entrance. The search revealed Merric was carrying several rounds
of ammunition for the shotgun. He was arrested and later charged
with possession of a firearm not registered to him in the National
Firearms Registration and Transfer Record in violation of 26 U.S.C.
 5861(d), 5871.
 In November 1996, after psychiatric evaluations and an
incompetency hearing before a magistrate judge, the district court
affirmed and adopted a recommendation that Merric was found
incompetent to stand trial. Thereafter, Merric was confined to a
federal prison hospital facility in Buttner, North Carolina, until
November 1997, when he was found competent and released from the
hospital. The diagnosis was that Merric suffered from
schizophrenia.
 In December 1997, Merric was indicted on the firearms
offense already described. Shortly before his scheduled trial in
February 1998, Merric pled guilty. In April 1998, the district
judge sentenced Merric to time already served in federal custody,
a $4,000 fine, and a three-year term of supervised release
conditioned, inter alia, on his repayment of $3,000 in counsel fees
paid to Merric's assigned counsel by the government under the
Criminal Justice Act. Merric now appeals from the final judgment,
challenging the fine and the requirement that he repay counsel fees
as a condition of supervised release.
 Merric's first argument against the fine is that the
district judge made inconsistent findings regarding Merric's
ability to pay. This argument turns on the fact that the
"judgment"--an eight-page form document--contains a page captioned
"Statement of Reasons" which, in addition to other information
(e.g., offense level, criminal history category) has a next-to-last
sentence reading: "Fine waived or below the guideline range
because of inability to pay."
 It is evident from the record as a whole that the
district judge deliberately considered whether Merric should be
fined and concluded that he did have the ability to pay a $4,000
fine. At the sentencing hearing, the district judge heard
testimony, which Merric did not contest, that Merric was to
receive about $20,000 in accrued social security disability
benefits, heard Merric's objection to the imposition of any fine,
rejected the government's recommendation of a fine of $15,000,
stated that the court did not "see why a reasonable fine at the low
end of the scale would not be appropriate," and then, "with all
this in mind," imposed a $4,000 fine. The page in the judgment
"Criminal Monetary Penalties" specifies that a fine is imposed in
the amount of $4,000. The separate memorandum entered on the same
day by the district judge explicitly states that "[t]he defendant
is able to pay a minimal fine but is not able" to pay more even in
installments. In short, the "inability to pay" finding is patently
a clerical error--as defense counsel came close to admitting at
oral argument--and the case bears no relation to United States v.
Momen, 104 F.3d 905, 911-13 (7th Cir. 1997), where there were
genuine ambiguities.
 Merric's second challenge to the fine is that the
district court erred in not expressly considering or making
findings on the factors outlined in 18 U.S.C. 3572(a). The
statute provides that in addition to more general factors bearing
on punishment (see id. 3553(a)), the court in considering a fine
should take account of such factors as the defendant's income,
earning capacity, financial resources, and the burden of the fine
imposed on the defendant and on anyone who is dependent on the
defendant or who would be responsible for the welfare of a person
financially dependent on the defendant.
 This court has ruled that "a district court need not make
express findings regarding a defendant's financial condition so
long as the record is sufficient for adequate appellate review." 
United States v. Peppe, 80 F.3d 19, 22 (1st Cir. 1996). See alsoUnited States v. Wilfred Am. Educ. Corp., 953 F.2d 717, 720 (1st
Cir. 1992). Where the pertinent information is presented in the
district court, this court will assume that the district court
considered it. Id. at 719. Here, the district court learned that
Merric planned to remain in Ellsworth, Maine, and to live on his
social security disability benefits of $835 per month after his
release. His parents were willing to pay for him to stay at a
hotel in Bangor for the time being. Merric, as already said, was
also entitled to $20,000 in back benefits.
 On this appeal, Merric points out that combining the
$4,000 fine with $3,000 in counsel fees represents a considerable
portion of his $20,000 net worth (he has no other assets or
liabilities) and makes it more difficult to start a new life and
get himself out of poverty. On the other hand, there is a
presumption that the defendant will pay a fine. See U.S.S.G. 
5E1.2(a); United States v. Lombardi, 5 F.3d 568, 572 (1st Cir.
1993), and the burden is on the defendant to show that his case
warrants an exception. Peppe, 80 F.3d at 22. On the facts before
the district judge, there was nothing improper about the decision
to impose a $4,000 fine.
 Merric's final objection to the fine is that the district
court erred in "delegating" to the probation officer the schedule
for paying the fine. Merric points out that the memorandum
accompanying the judgment includes a paragraph providing that
Merric is to pay a fine of $4,000 to the Clerk's Office in Bangor
and continues: "Any amount that the defendant is unable to pay now
shall be paid in monthly installments, to be determined in amount
by the supervising officer, during the period of his supervised
release." There is little doubt that this language was meant to
govern, even though the judgment contains a boilerplate statement
that the fine was due "[i]n full immediately."
 The government first says that we should review Merric's
claim only for plain error because no objection was raised at
sentencing to the allegedly improper delegation. The difficulty is
that there is no indication that Merric was told at the sentencing
hearing that a payment schedule for the fine would be delegated to
the probation officer; it appears that Merric learned of this only
after the formal judgment had been entered. Thus, the government
is effectively arguing that to preserve his claim, Merric had to
return to the district judge with a post-judgment motion. Cf. Fed.
R. Crim. P. 35(c).
 Most "errors" occur in a context in which counsel is on
notice that the court is taking or has just taken an objectionable
action. In such a case the failure to object does normally remit
the defaulting party whatever protection the plain error doctrine
affords. E.g., Fed. R. Evid 103(a); Fed. R. Civ. P. 51. But where
the error occurs in the judgment itself, there is no settled
general rule that counsel has to return to the district court and
seek correction there. Efficient though this result might be, this
is no occasion for us to create such an exhaustion requirement,
which could well entail problems of its own.
 Although this court has not previously ruled on the
delegation issue, we agree with Merric that the district judge
could not empower the probation officer to make a final decision as
to the installment schedule for payments. The text of 18 U.S.C. 
3572(d)(2) may not be conclusive in saying that "[t]he length of
time over which scheduled payments will be made shall be set by the
[sentencing] court" (conceivably, "set" could include delegation);
but we join the other circuit courts that have held that it is the
inherent responsibility of the judge to determine matters of
punishment and this includes final authority over all payment
matters. The government does not explicitly disagree.
 The government points out that in United States v. Lilly,
80 F.3d 24, 29 (1st Cir. 1996), we read a judgment requiring
restitution "as directed" by the probation officer to reserve final
authority to the district court. But Lilly is not on all fours,
because we there relied on a later explanation by the district
judge that he had not given the probation officer the authority to
set a binding payment schedule. Id. Because we think that the
judge rather than the probation officer must have the final
authority to determine the payment schedule, we will vacate the
sentence and remand so that the district judge can insert into the
judgment a phrase or sentence making this reservation of authority
explicit.
 We now turn our attention to the other element of the
sentence challenged by Merric on this appeal, namely, the district
court's requirement that Merric repay the government the counsel
fees it paid for his representation, an amount that later proved to
be about $3,000. It clear enough that the district court can
require such repayment, since 18 U.S.C. 3006A(f) so provides. 
However, Merric objects to making this repayment a condition of
supervised release.
 The transcript shows that Merric was explicitly advised 
at the sentencing hearing that the judgment would contain such a
provision and neither he nor his counsel made any objection to it. 
Accordingly, the imposition of this condition is reviewed for plain
error only. This requires Merric to establish "an obvious and
clear error under law" that "seriously affect[s] the fairness,
integrity or public reputation of judicial proceedings." United
States v. Phaneuf, 91 F.3d 255, 263 (1st Cir. 1996) (quoting United
States v. Olano, 507 U.S. 725, 736 (1993)).
 As it happens, we think that the district court's
decision to make repayment a condition of supervised release was
not error at all. Admittedly, there has been a certain amount of
disagreement among the circuits--not as to whether CJA counsel fees
can be recovered from a defendant (the statute specifically permits
it)--but as to whether such repayment can be made a condition
either of probation or of supervised release. Merric has, or
shortly will have, the funds to repay the government, and the issue
here is merely whether the district judge had authority to make
this a condition of supervised release.
 The statute governing conditions of supervised release,
18 U.S.C. 3583(d), requires the court to order certain
conditions--not relevant here--for any supervised release and then
provides that the court "may" order "any other condition it
considers to be appropriate" so long as the condition is (1)
reasonably related to certain specified statutory factors, (2)
involves no greater deprivation of liberty than is reasonably
necessary to satisfy certain specified statutory purposes, and (3)
it is consistent with any pertinent policy statements issued by the
Sentencing Commission. The statutory factors and purposes
specified--taken by cross-reference from a longer list set forth in
18 U.S.C. 3553(a) as factors generally to be considered in
imposing a sentence--are (so far as arguably pertinent here) the
following:
 -- "the need . . . to afford
 adequate deterrence to criminal
 conduct," 18 U.S.C. 
 3553(2)(B), and

 -- "the need . . . to protect the
 public from further crimes of
 the defendant," id. 3553(2)(C).

 In our view, imposing the cost of CJA counsel on the
defendant, where the defendant proves able to pay, is a deterrent
to crime just like any other financial imposition. That monetary
payments deter crime is the notion that underlines the elaborate
code of fines reflected in the Federal Criminal Code and the
Sentencing Guidelines. This point has been explained so thoroughly
by Judge Easterbrook, sustaining a requirement that defendant pay
the cost of a 90-day work release program to which he had been
sentenced, that further discussion of this point is unnecessary. 
United States v. Turner, 998 F.2d 534, 536-38 (7th Cir.), cert.
denied, 510 U.S. 1026 (1993).
 The condition that Merric repay counsel fees out of
available funds is thus "reasonably related" to deterrence, one of
the factors specified by Congress, and therefore also satisfies a
further factor ("the need to protect the public from further crimes
of the defendant"). Congress' second requirement in 18 U.S.C. 
3583(d)--that the condition "involve[ ] no greater deprivation of
liberty than is reasonably necessary" for deterrence or other
specified factors, 18 U.S.C. 3583(d)--is satisfied not only
because (among other reasons) Merric can afford to pay but also
because he will not be deprived of liberty at all. The final
requirement under the statute is that the condition be "consistent
with any pertinent policy statements" issued by the Sentencing
Commission. Id.
 The guideline addressed to "conditions of supervised
release" (U.S.S.G. 5D1.3) is replete with repayment conditions: 
these include, as mandatory conditions, adherence to an installment
schedule to pay any yet unpaid fine and payment under various
sections for victim restitution. Id. 5D1.3(a)(5),(6). Among
recommended standard conditions, the Commission suggests that the
defendant be required to provide support to the defendant's
dependents and meet other family responsibilities, and also that
the defendant pay the statutory special assessment or adhere to a
court-ordered installment schedule for paying it. Id. 
5D1.3(c)(4), (14).
 Given the number of repayment conditions that the
Commission either required or encouraged, the requirement to repay
CJA counsel fees is facially consistent with the Commission's
policy guidelines. Of course, one could argue that the guideline's
failure to require or recommend repayment of counsel fees as a
standard condition suggests that the Commission was opposed to such
a requirement, but it is at least as likely that the Commission did
not focus upon the issue. In any event, the same guideline
provision provides that the court "may impose other conditions of
supervised release" so long as they meet the three requirements set
forth by Congress and already described.
 This court has held that the requirement that counsel
fees be repaid to the government is a proper condition of
probation. United States v. Santarpio, 560 F.2d 448 (1st Cir.),
cert denied, 434 U.S. 984 (1977). Although the case contains
language consistent with our present view, Santarpio is a pre-
guideline case and we have preferred therefore to make our own
analysis of the statute and guidelines. However, it is worth
adding that we are not persuaded by the Ninth Circuit's decision in
United States v. Eyler, 67 F.3d 1386 (9th Cir. 1995), which holds
that repayment of counsel fees cannot be made a condition of
supervised release and saying without explanation that such a
condition does not serve the purposes of deterrence.
 To say that repayment of counsel fees is a permissible
condition of probation or supervised release is a different
question from whether such a condition is wise, an issue that is
primarily one for the district court. Here, no such objection was
made in the district court. In any case, the record there showed
that Merric was about to receive a large sum in back payments for
social security disability--some of it seemingly for a period in
which the government was maintaining him in a prison hospital at
Buttner--and the district court was told nothing that would
reasonably have given it pause in requiring that a small portion of
the $20,000 back payment should reimburse the Treasury for what it
had just spent on Merric's behalf to provide him with counsel.
 Obviously, a court could not properly make it a condition
of probation or supervised release that a penniless defendant make
immediate payments, nor can we imagine sending defendant back to
jail where he had done his best to comply with an installment
schedule. See Santarpio, 560 F.2d at 455. Further, there may be
circumstances in which requiring repayment of counsel fees even on
an installment basis would interfere with the defendant's other
obligations (such as paying fines or support payments). Here, the
amount in question was modest and well covered by the prospective
back payments for social security.
 Merric draws our attention to a Judicial Conference
recommendation which urges as a matter of policy that repaying the
cost of counsel "should not be made a condition of probation." 
The reason for the recommendation is unclear: possibly the Judicial
Conference had primarily in mind the risk that a defendant,
otherwise eligible for probation, might be denied this opportunity
for lack of funds. It is also possible that the Judicial
Conference was concerned with discouraging a defendant from
accepting appointed counsel, although this seems unlikely since
acquittal is usually a defendant's main objective.
 In all events, while the views of the Judicial Conference
are entitled to respectful attention on any matter--and on a few
matters have binding legal force--the lawfulness of particular
conditions of probation and supervised release are governed solely
by statute and by the guidelines of the Sentencing Commission. 
Further, we are here dealing with supervised release and, in the
absence of explicit rationale for the Judicial Conference
recommendation, we have no idea whether its reasons also apply to
supervised release or to a case in which the defendant has
virtually in hand the money necessary to repay counsel fees. 
Accordingly, the recommendation does not control in this case.
 There is one final matter to address. At oral argument
Merric's able counsel informed the court that it now appears that
very expensive drugs are important in controlling Merric's
schizophrenia and that he may not be able to afford these drugs,
which could increase his ability to function lawfully in society. 
Candidly admitting that this issue had never been presented to the
district court, defense counsel urged that this unusual need ought
to be taken into account in assessing Merric's ability to pay the
$4,000 fine (and so far as appears, this same argument can be made
as to counsel fees).
 The government responded at oral argument that avenues
exist for Merric to raise this medical-need issue in the district
court even after the judgment becomes final, but our own
preliminary review suggests to us that the district court might
have little flexibility to remit or reduce the fine if we simply
affirmed. Seemingly, 18 U.S.C. 3573 does no more than permit the
government to move to remit unpaid portions of a fine or a special
assessment where "reasonable efforts to collect . . . are not
likely to be effective." Fed. R. Crim. P. 35(b) also permits the
government to move for a reduction in sentence but only where the
defendant provides substantial assistance.
 Needless to say, Merric's need for medicine, assuming the
allegations are true, does not in any way invalidate any of the
payment obligations imposed by the district court, the issue having
never been raised and there being no plain error on this record. 
However, we have already concluded that the judgment should be
remanded to correct the judgment on the delegation issue, and we
have broad authority to shape a remand in the interests of justice. 
See 28 U.S.C. 2106. Exercising this authority, we expressly give
the district court leave to consider any argument based on Merric's
alleged need for medicine.
 Merric has not argued either in the district court or on
this appeal that consideration of Merric's back payments for social
security disability--merely to determine his ability to pay a fine
or repay counsel fees--is at odds with the anti-assignment
provision of the social security statute. 42 U.S.C. 407. The
point is an obscure one, raised more by case law than statutory
language; and we take no position on it since there is certainly no
plain error. However, again in the interests of justice, the
district court is free to consider the matter if it chooses.
 The sentence but not the conviction is vacated, and the
matter is remanded to the district court for further proceedings
consistent with this opinion.
 It is so ordered.